UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1199SEIU UNITED HEALTHCARE
WORKERS EAST, FLORIDA
REGION,

    Petitioner,

v.                                            Case No. 8:24-cv-2854-KKM-LSG

KENDALL HEALTHCARE
GROUP, LTD, et al.,

    Respondents.
_____

## ORDER

1199SEIU United Healthcare Workers East, Florida Region—a union—petitions the Court to compel several hospitals whose workers it represents to arbitrate grievances. Pet. (Doc. 1). The hospitals oppose the petition. Opp. (Doc. 38). For the reasons below, I grant the petition and order the parties to arbitrate.

### I. BACKGROUND

The parties do not materially dispute the factual allegations in the union's petition. Each hospital has a separate collective bargaining agreement (CBA) with the union, and the parties agree that the agreements are materially identical. *See* Pet.

¶ 24; Opp. at 1. Under the terms of those CBAs' arbitration provisions, *see* CBA (Doc. 1-2), Art. 14, the union filed grievances alleging violations of Article 46, § 5 of the CBAs on March 15, 2024, *see* (Doc. 1-3); (Doc. 38-1).[1] Section 5 provides that the union will indemnify the hospital for certain claims arising in relation to Article 46:

> The [u]nion agrees to indemnify and hold the [h]ospital harmless against any and all liability, responsibility, claims, suits, debts, damages, demands, orders or judgments that may arise out of any action or omissions by the [h]ospital in accordance with the provisions of the Article or in reliance upon the authorization mentioned in the Article.

CBA Art. 46, § 5. The union's grievances claim that the hospitals "wrongfully seek[] indemnification for expenses and attorneys' fees incurred in defending against the union's enforcement of dues deductions required under Article 46." (Doc. 1-3) at 1.[2] That is, the hospitals seek first-party indemnification for the cost of defending

---

[1] The grievances also allege that the hospitals' "conduct is in retaliation for enforcement of rights protected under the [Labor Management Relations Act] and as such in violation of Article 24" of the CBAs. (Doc. 1-3) at 1. Although the union originally sought an order compelling arbitration of its claims under both Article 24 and Article 46, *see generally* Pet., it has since "withdraw[n] the portion of its Petition seeking to compel arbitration of an alleged breach of Article 24," Reply (Doc. 41) at 1–2; *see also id.* at 2 ("[The union] likewise agrees to strike any reference to an alleged breach of Article 24 in its [g]rievances."). Accordingly, only the grievances under Article 46 are at issue.

[2] The hospitals submit evidence that several of them received undated grievances only in December 2024. *See* Opp. at 5–6; (Doc. 38-2). As explained below, though, the grievances' timing is immaterial to the resolution of this petition.

2

against unfair labor practice charges that the union filed against them. *See* Pet. ¶¶ 28–29. When the parties did not resolve the grievances, the union demanded arbitration. *See* (Doc. 1-4); *see also* CBA Art. 14, § 4 ("If the grievance is not satisfactorily resolved . . . the [u]nion may advance the grievance to arbitration by submitting a written demand for arbitration.").[3]

Stepping back in time—shortly after the union filed its grievances but before it demanded arbitration—the hospitals sued the union. *See* Compl. (Doc. 1), *Kendall Healthcare Grp., Ltd. et al v. 1199SEIU, United Healthcare Workers E., Fla. Region*, No. 8:24-cv-00785-KKM-CPT (M.D. Fla. Mar. 29, 2024). They claimed the union breached the CBAs by "refus[ing] to provide signed and authenticated electronic dues authorization forms" (Count I) and refusing to indemnify the hospitals for costs incurred in defending against the unfair labor practices charges that the union brought against the hospitals (Count II). *Id.* ¶¶ 41–53.[4]

---

[3] The union claims that it "demanded arbitration of each of the grievances," Pet. ¶ 38, though it submits only a single demand email, *see* (Doc. 1-4). As the hospitals do not argue that the union did not demand arbitration on each grievance, I assume that it did.

[4] The particulars of the parties' dispute are not important for this petition's purposes, but they are set out in detail in an order in the earlier action. *See Kendall Healthcare Grp., Ltd. v. 1199SEIU, United Healthcare Workers E., Fla. Region*, No. 8:24-cv-0785-KKM-CPT, 2024 WL 4957971, at *1–2 (M.D. Fla. Dec. 4, 2024), *reconsideration denied*, No. 8:24-cv-0785-KKM-CPT, 2025 WL 524286 (M.D. Fla. Feb. 18, 2025).

After dismissing Count I on the union's motion, I stayed Count II because I concluded that grievances on which the union had (by then) demanded arbitration implicated an issue in that count—whether the union had a duty to indemnify the hospital. *See Kendall Healthcare Grp., Ltd. v. 1199SEIU, United Healthcare Workers E., Fla. Region*, No. 8:24-cv-0785-KKM-CPT, 2024 WL 4957971, at *3–4 (M.D. Fla. Dec. 4, 2024), *reconsideration denied*, No. 8:24-cv-0785-KKM-CPT, 2025 WL 524286 (M.D. Fla. Feb. 18, 2025); *see also* 9 U.S.C. § 3 (requiring a court to say a proceeding on "any issue referrable to arbitration"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 642 F.3d 1344, 1353 n.4 (11th Cir. 2011) ("[F]ederal courts look to the [Federal Arbitration Act] for guidance when dealing with [labor] arbitration cases.").

The union now seeks to compel the hospitals to arbitrate those grievances. *See* Pet.

## II. LEGAL STANDARD

An arbitration agreement contained in a collective bargaining agreement, like other arbitration agreements, is a matter of contract. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). "[A] party cannot be required

to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). A court faced with a request to compel arbitration must therefore determine (1) whether the parties have a valid arbitration agreement, and (2) whether the agreement is enforceable and applies to the dispute at issue (unless a valid provision commits this second question to the arbitrator). *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298–99 (2010). In answering the second question, a court must bear in mind "the well-known presumption of arbitrability for labor disputes." *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 377 (1974).

## III. ANALYSIS

The parties do not contest the existence of a valid arbitration agreement. They dispute only whether their arbitration agreement covers the union's grievances. It does. And as the hospitals fail to identify any judicially cognizable issue barring an order to arbitrate, I grant the union's petition.

### A. The Arbitration Clause Covers the Union's Grievances

To start, the hospitals argue, as they did in the earlier proceeding, that the CBAs' arbitration clause does not cover the union's grievances about Article 46. On the hospitals' view, "the [u]nion cannot grieve an action or omission that the

5

[h]ospitals never undertook under the CBA[s]." Opp. at 7. Because, they say, Article 46, § 5 imposes no duties on the hospitals, the union cannot file a legitimate grievance for a violation of that section. *Id.* at 10 ("The [u]nion cannot simply invent obligations under the CBA[s] and then submit 'grievances' to create obligations that do not exist in the CBA[s] for the end-goal of compelling arbitration for its own sake.").

As explained in the order in the prior proceeding, this argument seeks an impermissible merits determination. *See Kendall Healthcare Grp.*, 2024 WL 4957971, at *4 ("This argument puts the cart before the horse and asks me to adjudicate the merits of the union's grievance, something I may not do."). It may be that the union's grievances are meritless or even frivolous. Article 46 may impose no obligations on the hospitals at all. But "even if [the claims] appear[] to the court to be frivolous, the union's claim[s] that the employer has violated the collective-bargaining agreement[s are] to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *AT&T Techs.*, 475 U.S. at 649–50. Even if the hospitals were right that Article 46 provides no arguable basis for relief, that would not affect the arbitrability of the union's grievances. *Id.*

6

Impermissible merits determinations aside, the plain text of the parties' agreements covers the grievances. The CBAs provide that a grievance is "any complaint submitted in writing by an [e]mployee or the [u]nion against the [h]ospital for breach of a specific provision of this [a]greement, except as to those provisions which are not subject to this Article." CBA Art. 14, § 2. It further permits the union to "advance [a] grievance to arbitration by submitting a written demand" "[i]f the grievance is not satisfactorily resolved" through the grievance process. *Id.* Art. 14, § 4.A. The union's grievances claim that the hospitals breached Article 46, § 5 of the CBA, and the hospitals fail to identify any CBA provision that exempts Article 46 from the CBAs' standard grievance structure. *See generally* Opp. As the union has demanded arbitration, *see* (Doc. 1-4); *supra* n.3, the CBAs' arbitration provision applies to the union's grievances.

### B. An Arbitrator Must Decide Whether the Grievances Are Timely

The hospitals next argue that even if the CBAs facially cover the union's grievances, they are not arbitrable because they are untimely and "deemed withdrawn" under the parties' agreements. Opp. at 12–14. In support, they rely on *United Steelworkers of Am., AFL-CIO-CLC v. Cherokee Elec. Co-op.*, No. CIV.A. 86-AR-2163-M, 1987 WL 17056 (N.D. Ala. Feb. 19, 1987), which the Eleventh

Circuit non-precedentially and summarily affirmed in *United Steelworkers v. Cherokee*, 829 F.2d 1131 (11th Cir. 1987) (mem.).

*Cherokee Electric* is not instructive. In that case, the court refused to compel arbitration of a facially untimely grievance because the union "never contended that the grievance was timely." *Cherokee Electric*, 1987 WL 17056, at *3. Here, though, the union maintains that its grievances are timely, relying on the continuing-violations doctrine and the union's interpretation of the step-based grievance review structure in the CBAs. *See* Reply (Doc. 41) at 4; *see also Wise Alloys*, 807 F.3d at 1272–73 (holding that a "continuing violation" theory was a permissible interpretation of a CBA).

More, the hospitals' contention that they "never agreed to arbitrate untimely grievances" is belied by the CBAs themselves. Opp. at 14. The CBAs include a clause providing that "[i]f there is an issue as to whether a grievance is barred for failure of one or both of the parties to comply with the procedural requirements of this Article (procedural arbitrability), the same arbitrator will be permitted to rule on both the question o[f] procedural arbitrability and the merits." CBA, Art. 14, § 4(E). And questions of timeliness are generally for the arbitrator even absent such a provision. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *Belke v. Merrill*

*Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1027–28 (11th Cir. 1982), *abrogated in part on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Accordingly, it is for the arbitrator to determine whether the grievances are timely.

## C. The Union Did Not Waive Its Right to Arbitrate

Last, the hospitals argue that the union waived its right to arbitrate by participating in the earlier proceeding. Opp. at 14–16.

Whether a party has waived its right to arbitrate is a question for the court. *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1354 (11th Cir. 2011) (per curiam). A two-step analysis applies. First, I must "consider whether 'under the totality of the circumstances, the [union] has acted inconsistently with the arbitration right.'" *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002)). The crux of that inquiry is "whether a party has 'substantially invoked the litigation machinery prior to demanding arbitration.'" *Id.* (alteration adopted) (quoting *S & H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). Second, if that first step is satisfied, I must consider whether the other party is prejudiced. *Id.*

The hospitals contend that the union acted inconsistently with its right to arbitrate by moving to dismiss in the earlier proceeding, citing *Davis v. White*, 795 F. App'x 764 (11th Cir. 2020) (per curiam); Opp. at 15–16. In *Davis*, the defendant initially responded to the complaints by moving to dismiss. *Davis*, 795 F. App'x at 766. When the plaintiffs sought to amend their complaints, the defendant opposed amendment as futile. *Id.* When the court granted the motions to amend and denied the motion to dismiss, the defendant filed frivolous interlocutory appeals. *Id.* at 767, 769. After the Eleventh Circuit dismissed the appeals sua sponte, the defendant moved for reconsideration. *Id.* at 767. Only after losing on reconsideration did the defendant finally tell the plaintiffs "that it intended to submit the disputes to arbitration"—around eighteen months into the action. *Id.*

This case is a far cry from *Davis*. In the prior action here, the union raised the issue of arbitrability in its initial Rule 12 motion, asking that the arbitrable part of that action be stayed. *See* Mot. to Dismiss (Doc. 16), *Kendall Healthcare Grp., Ltd. v. 1199SEIU, United Healthcare Workers E., Fla. Region*, No. 8:24-cv-00785-KKM-CPT (M.D. Fla. June 10, 2024). And it filed this petition to compel shortly after I granted that stay request. *See* Pet. The union has consistently maintained that the issue of the hospitals' right to indemnification under Article 46 should be

10

resolved in arbitration, and its conduct does not "smack[] of outcome-oriented gamesmanship played on the court and the opposing party's dime." *Gutierrez*, 889 F.3d at 1236.

True, the union also sought the dismissal of the arbitrable issues in the former action. *See* Opp. at 15–16. But the hospitals cite no authority suggesting that a party waives its right to arbitrate by seeking both dismissal and a stay pending arbitration as alternatives. "[N]ot every motion to dismiss is inconsistent with the right to arbitration," *Davis*, 795 F. App'x at 769 (quoting *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)), and arguments in the alternative are commonplace in civil practice, *see, e.g.*, FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Moving to dismiss does not waive a party's right to arbitrate when the party seeks to protect its right to arbitrate in the same motion. *See Anderson v. Goodleap, LLC*, No. 8:23-cv-02366-WFJ-TGW, 2023 WL 8599789, at *4 (M.D. Fla. Dec. 12, 2023) (concluding that party did not waive its right to arbitrate by filing a combined motion to dismiss and motion to compel arbitration).

The union has not acted in a manner inconsistent with its right to arbitrate, so waiver does not preclude an order compelling arbitration.

11

## IV. CONCLUSION

Binding arbitration agreements cover the union's grievances, and the hospitals have failed to identify any barrier to arbitration. Accordingly, the following is **ORDERED:**

1. The union's Petition to Compel Arbitration (Doc. 1) is **GRANTED.**

2. The hospitals are **ORDERED** to arbitrate the union's grievances charging violations of Article 46, § 5 of the parties' collective bargaining agreements.

3. The Clerk is directed to **ENTER JUDGMENT** in favor of the petitioner and against the respondents.

4. The Clerk is further directed to **TERMINATE** any pending deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on April 28, 2025.

*/s/ Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge